UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SOUTHERN PAN SERVICES COMPANY,

    Plaintiff,

v.                            Case No. 3:07-cv-592-J-33TEM

S.B. BALLARD CONSTRUCTION COMPANY
and LIBERTY MUTUAL INSURANCE
COMPANY,

    Defendants.
_____/

## ORDER

    This cause comes before the Court pursuant to Defendants'
Motion to Dismiss Counts III-VIII of Plaintiff's Amended
Complaint (Doc. # 46), filed on January 1, 2008, and Defendants'
Motion for Partial Summary Judgment (Doc. # 27), filed on October
12, 2007. Southern Pan filed a response to the motion to dismiss
on February 7, 2008. (Doc. # 54.) After obtaining a stay to
conduct discovery, Southern Pan filed a response to the motion
for partial summary judgment on May 9, 2008. (Doc. # 70-2.) The
defendants filed a reply on May 30, 2008. (Doc. # 74.) For the
reasons that follow, the defendants' motion to dismiss is granted
in part and denied in part; and the defendants' motion for
partial summary judgment is denied.

1

I.  **Background**

S.B. Ballard Construction Company was the general contractor working on a development known as Ocean Towers at Hammock Beach. (See Doc. # 1-3, at 2 (referring to S.B. Ballard Construction Company's contract with the owner of Ocean Towers as the "General Contract").)  Southern Pan provided construction services to the development under a subcontract with S.B. Ballard Construction Company.  (See Doc. # 27, at 2.)  Southern Pan filed this lawsuit alleging that S.B. Ballard failed to pay Southern Pan approximately $1.9 million for the construction work.  (Doc. # 1, at 3-4.)  Southern Pan also named Liberty Mutual Insurance Company as a defendant.  Liberty Mutual is the surety on a lien transfer bond.  This transfer bond transferred Southern Pan's claim of lien from the Ocean Towers property and an existing payment bond to the transfer bond.

Early in the litigation, S.B. Ballard filed its motion for partial summary judgment.  (Doc. # 27.)  S.B. Ballard's motion is founded on a release signed by one of Southern Pan's employees on April 20, 2006, as part of Southern Pan's receipt of a progress payment for its work.  (See Doc. # 27.)  The release purported to waive all claims Southern Pan might have against S.B. Ballard arising out of work performed through April 30, 2006.  (Doc. # 27-2.)

In the motion for partial summary judgment, the defendants argue that the release cuts off that portion of Southern Pan's claim arising out of work performed through April 30, 2006. (Doc. # 27, at 4.)   Thus, the defendants request the Court to make a summary adjudication barring those portions of Southern Pan's claims arising from work performed through April 30, 2006.

The release consisted of a preprinted form substantially identical to a form attached to the subcontract itself. (<u>Compare</u> Doc. # 27-2 <u>with</u> Doc. # 1-3, at 21.)   The form attached to the subcontract, though, bore a large X through it and the handwritten notation, "USE FLA STATUTORY FORMS." (Doc. # 1-3, at 21.)   According to Southern Pan, this was because Southern Pan was unwilling to use the form release proposed by S.B. Ballard, and the parties instead agreed to use a form prescribed by Florida statute.

Southern Pan filed an amended complaint on December 6, 2007, alleging that S.B. Ballard fraudulently induced Southern Pan's employees to sign the release, rather than the Florida statutory form the parties had agreed to use. (Doc. # 43.)   Specifically, Southern Pan alleges that S.B. Ballard representatives contacted Southern Pan representatives about the paperwork to accompany Southern Pan's monthly pay applications. (Doc. # 43, at 3.)   The amended complaint names certain S.B. Ballard employees who

allegedly explained that S.B. Ballard's internal accounting department "was used to seeing" the forms. (Doc. # 43, at 3-4.) According to Southern Pan, these employees assured it that the "'contract will govern' and that the [forms] would only be utilized to document payments made by [S.B.] Ballard to Southern [Pan]." (Doc. # 43, at 4.) Southern Pan claims that, despite these statements, S.B. Ballard really intended to use the forms to "effect a waiver and/or release of pending Southern [Pan] claims." (Doc. # 43, at 5.) Thus, Southern Pan's complaint adds four counts denominated as fraud, misrepresentation, bad faith, and breach of the covenant of good faith and fair dealing.[1] (Doc. # 43.) Southern Pan also added a count alleging that Liberty Mutual has refused in bad faith to pay Southern Pan the undisputed portion of the debt. (Doc. # 43, at 14.) In their motion to dismiss, the defendants challenge each of these claims and also challenge Southern Pan's quasi-contract claims.

## II. Standard of Decision

On a motion to dismiss, a district court must accept as true all the allegations in the complaint and construe them in the light most favorable to the plaintiff. <u>Jackson v. Bellsouth</u>

---

[1]Southern Pan claims that, because Liberty Mutual "has ratified, adopted and wrongfully sought to gain from" S.B. Ballard's misconduct, Liberty Mutual is jointly and severally liable on these theories. (<u>See, e.g.</u>, Doc. # 43, at 7.)

4

Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004).  A court must favor the plaintiff with all reasonable inferences from the allegations in the complaint.  Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true.").

To survive a motion to dismiss, a complaint must contain material addressed to each material element "necessary to sustain a recovery under some viable legal theory." Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 684 (11th Cir. 2001).  This material can be either direct or inferential, id. at 683, but it must be factual, see Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007); Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262–63 (11th Cir. 2004).  Thus, "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." Jackson, 372 F.3d at 1262–63 (quoting Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002)) (internal quotation marks omitted); accord Twombly, 127 S. Ct. at 1965 ("a formulaic recitation of the elements of a cause of action will not do . . . .").

A complaint need not state detailed factual allegations, but it must contain sufficient factual material to raise a right to relief above the speculative level. Twombly, 127 S. Ct. at 1965.

5

To raise a right to relief beyond the speculative level, a complaint must contain "enough factual matter (taken as true) to suggest" each material element of a claim. <u>See</u> <u>Watts v. Florida Int'l Univ.</u>, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting <u>Twombly</u> 127 S. Ct. at 1965) (internal quotation marks omitted). This requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the elements. <u>Id.</u> (quoting <u>Twombly</u> 127 S. Ct. at 1965) (internal quotation marks omitted).  This means a complaint must state factual allegations that are not merely consistent with the material elements of a claim, but rather, that plausibly suggest the elements. <u>Twombly</u>, 127 S. Ct. at 1966.

In short, then, the Court must evaluate a complaint on two dimensions to determine whether it states a claim.  First, the Court must determine whether the complaint addresses all the material elements necessary to recovery under some legal theory. Second, the Court must determine whether the complaint addresses these elements with factual material sufficient to raise a right to relief beyond mere speculation; that is, whether the material plausibly suggests the elements.  In making these determinations, the Court must accept all allegations as true, view them in the light most favorable to the plaintiff, and draw all reasonable inferences therefrom.

Where a complaint contains allegations of fraud, however, the Court must make a further evaluation. Federal Rule of Civil Procedure 9(b) requires the complaint to state with particularity the circumstances constituting fraud. The Court must determine whether this standard is met.

A different standard governs motions for summary judgment. The Court should render summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. <u>Hickson Corp. v. N. Crossarm Co., Inc.</u>, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593-94 (11th Cir. 1995) (citing <u>Celotex</u>, 477 U.S. at 324).

If there is a conflict between the parties' allegations or

7

evidence, the non-moving party's evidence is presumed to be true
and all reasonable inferences must be drawn in the non-moving
party's favor.  <u>Shotz v. City of Plantation, Fla.</u>, 344 F.3d 1161,
1164 (11th Cir. 2003).  "If a reasonable fact finder evaluating
the evidence could draw more than one inference from the facts,
and if that inference introduces a genuine issue of material
fact, the court should not grant summary judgment."  <u>Samples ex
rel. Samples v. City of Atlanta</u>, 846 F.2d 1328, 1330 (11th Cir.
1988) (citing <u>Augusta Iron & Steel Works, Inc. v. Employers Ins.
of Wausau</u>, 835 F.2d 855, 856 (11th Cir. 1988)).

## III. The Motion to Dismiss

### A.   Count III: Quasi-Contract

In count three, Southern Pan brings a claim for "unjust
enrichment and/or quantum meruit."  (Doc. # 1, at 6.)  S.B.
Ballard contends that count three fails to state a claim for two
reasons.  First, S.B. Ballard argues that Southern Pan has
confused two legal theories in count three.  (Doc. # 46, at 6.)
Confident that quantum meruit and unjust enrichment are distinct
theories, S.B. Ballard argues count three must be dismissed
because it improperly conflates the two.  (Doc. # 46, at 6.)

The Court does not decide whether Southern Pan's complaint
conflates two separate and distinct legal theories.  It simply
makes no difference.  "The form of the complaint is not

significant if it alleges facts upon which relief can be granted, even if it fails to categorize correctly the legal theory giving rise to the claim." Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 604 (5th Cir. Nov. 5, 1981)[2]; accord Evans v. McClain of Ga., Inc., 131 F.3d 957, 964 n.2 (11th Cir. 1997).   S.B. Ballard's argument is not aimed at any asserted deficiency in the complaint's factual allegations, but rather at an asserted deficiency in its categorization of the legal theory giving rise to the claim.   This argument must be rejected.

S.B. Ballard's second argument must also be rejected.   Here, S.B. Ballard submits that Southern Pan cannot state a quasi-contract claim because it has already stated a contract claim. (Doc. # 46, at 6 ("Southern Pan admitted a contract in Count III of its Complaint, which is fatal to a claim for equitable relief.").)   S.B. Ballard relies primarily on American Honda Motor Co. v. Motorcycle Info. Network, Inc., which held that, "to properly state a claim for unjust enrichment, a party must allege that no adequate legal remedy exists."   390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005).   From this, S.B. Ballard reasons that a

---

[2]The Eleventh Circuit has treated Dussuoy as binding precedent, though the case was decided after September 30, 1981. Bank v. Pitt, 928 F.2d 1108, 1112 n.4 (11th Cir. 1991), overruled on other grounds by Wagner v. Daewoo Heavy Indus. America Corp., 314 F.3d 541 (11th Cir. 2002).

complaint affirmatively alleging a contract -- and therefore, an available legal remedy -- cannot also state an unjust enrichment or quasi-contract claim.

This is not the case. Federal Rule of Civil Procedure 8(d) expressly authorizes pleading alternative or inconsistent claims. And it is perfectly permissible under Florida law[3] for a plaintiff to state claims in the alternative for recovery under a contract theory or a quasi-contract theory. <u>Hazen v. Cobb-Vaughan Motor Co.</u>, 117 So. 853, 857-58 (Fla. 1928); <u>accord</u> <u>Rosy Blue, N.V. v. Davis</u>, No. 6:07-cv-465, 2008 WL 2225655 at *4 (M.D. Fla. May 29, 2008); <u>Baycare Health Sys., Inc. v. Med. Savings Ins. Co.</u>, No. 8:07-cv-1222 at * 10 (M.D. Fla. Mar. 25, 2008); <u>Thunderwave, Inc. v. Carnival Corp.</u>, 954 F. Supp. 1562, 1565-66 (S.D. Fla. 1997); <u>Williams v. Bear Stearns & Co.</u>, 725 So. 2d 397, 400 (Fla. 5th DCA 1998); <u>cf.</u> <u>Wynfield Inns v. Edward Leroux Group, Inc.</u>, 896 F.2d 483, 488 (11th Cir. 1990) (explaining that remedies under quasi-contract and contract are mutually exclusive, and noting that plaintiff generally elects between such remedies after the verdict but before the judgment). A plaintiff is free to <u>plead</u> both claims, but may only <u>recover</u> on one. <u>Wynfield Inns</u>, 896 F.2d at 488. Thus, it is only when an

---

[3]The parties do not dispute that Florida law governs this claim.

express contract is <u>proven</u> that the quasi-contract claim must
yield. <u>Mobil Oil Corp. v. Dade County Esoil Mgmt. Co.</u>, 982 F.
Supp. 873, 880 (S.D. Fla. 1997); <u>see also</u> <u>Wynfield Inns</u>, 896 F.2d
at 488 (explaining that plaintiff normally elects remedy <u>after</u>
the verdict).

S.B. Ballard's reliance on <u>American Honda</u> for the opposite
result is misplaced. S.B. Ballard reads <u>American Honda</u>'s holding
outside its context. In <u>American Honda</u>, the plaintiff attempted
to state claims under two specific statutes and under a quasi-
contract theory based on the same facts. <u>American Honda</u>, 390 F.
Supp. 2d at 1178. The court dismissed the quasi-contract claim
because the plaintiff had an adequate remedy at law under the two
specific statutes. <u>Id.</u> at 1178. Though the plaintiff also
stated a claim under a contract theory, <u>id.</u> at 1177–78, the court
did not rely on that fact to dismiss the quasi-contract claim.
<u>See</u> <u>id.</u> at 1178. This is not surprising because the law allows
contract and quasi-contract claims to coexist in the same
complaint, even though in other contexts an adequate legal claim
pushes out an equitable claim based on the same facts:

> There is no dispute that under Florida law, the general
> rule is that if the complaint on its face shows that
> adequate legal remedies exist, equitable remedies are
> not available. However, this doctrine does not apply
> to claims for unjust enrichment. It is only upon a
> showing that an express contract exists that the unjust
> enrichment or promissory estoppel count fails. Until

>an express contract is proven, a motion to dismiss a
>claim for promissory estoppel or unjust enrichment on
>these grounds is premature.

Mobil Oil Corp. v. Dade County Esoil Mgmt. Co., 982 F. Supp. at

880. The holding in American Honda, then, is an example of the

general rule. The case currently before this Court, however,

falls within the exception.

### B. Counts IV & V: Fraud & Misrepresentation

Federal Rule of Civil Procedure 9(b) plainly requires the

circumstances underlying Southern Pan's fraud claims to be stated

with particularity. See Fed. R. Civ. P. 9(b) ("In alleging fraud

. . . , a party must state with particularity the circumstances

constituting fraud . . . ."). Additionally, Rule 9(b) imposes

the same pleading standard on Southern Pan's misrepresentation

claim because that claim "sounds in fraud" under Florida law.

Harrison Enters., Inc. v. Moran, No. 97-4362-CIV, 1999 WL

1211753, at *3 (S.D. Fla. Aug. 30, 1999). The Rule 9(b) standard

is met if the complaint sets out the following:

>(1) precisely what statements were made in what
>documents or oral representations or what omissions
>were made, and (2) the time and place of each such
>statement and the person responsible for making (or, in
>the case of omissions, not making) same, and (3) the
>content of such statements and the manner in which they
>misled the plaintiff, and (4) what the defendants
>obtained as a consequence of the fraud.

Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364,

1371 (11th Cir. 1997) (internal quotation marks omitted).

Southern Pan's allegations very nearly meet the <u>Brooks</u> standard.  They suffer from only relatively minor deficiencies: they fail to identify the place or the time of the alleged fraudulent statements.  The complaint states with reasonable precision what statements were made.  (Doc. # 43, at 3-4.)  It also specifically names the people who made the statements (Doc. # 43, at 3-4).  The complaint sets out the content of the statements, and explains that Southern Pan was misled into relying on the representation that the release forms were required merely to document S.B. Ballard's payments to Southern Pan.[4]  (Doc. # 43, at 4.)  Finally, the complaint alleges that Southern Pan used the release forms as a result of the misstatements.  (Doc. # 43, at 4.)  Because the complaint provides no information about the place at which the statements were made, and because it sets forth only a very general time frame of the statements[5] (Doc. # 43, at 3 ("After Southern began

_____

[4]Here, Southern Pan's allegations are not a model of clarity. Instead of simply stating that Southern Pan was misled into believing that the release forms were required by an unadaptable accounting office at S.B. Ballard, Southern Pan stated that S.B. Ballard made such a representation and Southern Pan began utilizing the forms in reliance on the representation.

[5]Southern Pan argues that its complaint provides adequate specification of the time of the fraudulent statements.  According to Southern Pan, some of the fraudulent statements were made on the date the subcontract was signed.  (Doc. # 54, at 16.)  Southern Pan

13

its performance of the Subcontract . . . .")), though, it fails to meet the Brooks standard.

The Brooks framework is not the only way of meeting the requirements of Rule 9(b). Brooks, 116 F.3d at 1371. In certain cases, detailed information about the circumstances of an alleged fraud would not be available to plaintiffs beforehand. NCR Credit Corp. v. Reptron Elecs., Inc., 155 F.R.D. 690, 692 (M.D. Fla. 1994). In such cases, a plaintiff can comply with Rule 9(b) by reasonably delineating the acts and transactions that allegedly constituted the fraud. Id. However, "[t]he 'reasonable delineation of the underlying acts and transactions' test should only be applied in those cases where due to the nature of the litigation . . . it is impossible for the litigant to have access to detailed knowledge necessary to otherwise meet the requirement of Rule 9(b)." Id.

In this case, Southern Pan has presented no information suggesting it would be impossible for Southern Pan to have access to the detailed knowledge necessary to state the place at which the allegedly fraudulent statements were made. In fact, the opposite appears true. If Southern Pan knows who made the

_____

has not identified any allegedly fraudulent statement made at the time of the signing of the subcontract. Thus, if Southern Pan seeks to rely on some statement made at that time, it has entirely failed to meet the particularity requirement of Rule 9(b).

statements, it most likely knows where the statements were made. Thus, Southern Pan cannot benefit from the reasonable delineation standard.

Even where the reasonable delineation standard is unavailable, it may be possible to comply with the particularity requirement of Rule 9(b) by providing particulars other than those identified in the <u>Brooks</u> standard.   <u>See</u> <u>Seville Indus. Machinery Corp. v. Southmost Machinery Corp.</u>, 742 F.2d 786, 791 (3d Cir. 1984) ("Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud.").   The Court need not reach this question, though, because Southern Pan has not stated any such particulars. Southern Pan has stated most, but not all, of the particulars required by the <u>Brooks</u> standard.   It has not met the <u>Brooks</u> standard, though.   And it has not attempted to comply with Rule 9(b) by stating particulars outside the <u>Brooks</u> framework.   Thus, Southern Pan's claims for fraud and misrepresentation must be dismissed without prejudice.

### C.   Counts VI & VII: Bad Faith

In counts VI and VII, Southern Pan brings claims for "bad faith" (Doc. # 43, at 10) and "breach of covenant of good faith and fair dealing" (Doc. # 43, at 12).   S.B. Ballard challenges both counts.

S.B. Ballard contends that count VI does not state a claim for two reasons. First, "Florida law does not recognize an independent common law cause of action for bad faith under the circumstances of this case." (Doc. # 46, at 20.) That may be true, but Southern Pan does not attempt to assert some independent common law cause of action. Instead, according to Southern Pan, its claim in count VI is merely for a breach of the subcontract.[6] (Doc. # 54, at 24.) S.B. Ballard's argument is founded on a misunderstanding of the claim in count VI. The argument must be rejected.

For the same reason, S.B. Ballard's second argument must be rejected. Not realizing that Southern Pan's claim is founded on the contract, S.B. Ballard assumes the claim seeks recovery on a tort theory. (Doc. # 46, at 20 ("At best, Southern Pan has attempted to bring a claim against [S.B. Ballard] under a tort theory.").) S.B. Ballard explains that, "The Economic Loss Rule bars tort recovery on claims brought for actions constituting a

---

[6]Perhaps the breach-of-contract theory set forth in this claim is unnecessary given the general breach-of-contract claim set forth in count II (see Doc. # 1, at 6 ("Ballard has breached the Subcontract with Southern in many and diverse ways, including without limitation [various specific failures] and other failures that will be outlined at trial."). But the Court declines to dismiss a count that does in fact state a claim, for the sole purpose of trimming arguably unnecessary verbiage from the complaint.

breach of contract." (Doc. # 46, at 21.) Because Southern Pan does not seek to recover on a tort theory in count VI, S.B. Ballard's argument must fail.

S.B. Ballard correctly perceives that count VII is a contract claim for breach of the implied covenant of good faith and fair dealing. The covenant was breached, according to the complaint, because S.B. Ballard induced Southern Pan to use the release form "under the false pretenses that the documents would only be utilized as evidence of receipts of payment." (Doc. # 43, at 12.) S.B. Ballard argues that this was, "at best, a breach of contract." (Doc. # 46, at 24.) That is precisely the claim Southern Pan states, and it is no argument for dismissal.

Liberty Mutual, for its part, contends that it is only a party to this action because it is the surety on the transfer bond. It argues that it had no contractual duties to Southern Pan under the subcontract. (See Doc. # 46, at 22, 24.) Southern Pan has entirely failed to address Liberty Mutual's argument. The Court knows of no authority for holding a surety directly liable -- rather than derivatively liable on its bond -- for the breach of a contract to which the surety was not a party. In its complaint, Southern Pan alleged that Liberty Mutual breached the contract through its agent S.B. Ballard. (E.g., Doc. # 43, at 10.) The complaint contains no factual allegations plausibly

suggesting that S.B. Ballard was acting as Liberty Mutual's agent when S.B. Ballard breached the subcontract. Instead, the complaint simply states that bare legal conclusion. This is insufficient to survive a motion to dismiss. Accordingly, the claims against Liberty Mutual in counts VI and VII must be dismissed. Though it seems unlikely, it is possible that Southern Pan will be able to remedy this problem with its claims against Liberty Mutual. For that reason, the dismissal is without prejudice.

**D. Count VIII: Bad Faith Failure to Pay Undisputed Amounts**

In count VIII, Southern Pan points to the defendants' admission that they are indebted to Southern Pan in the amount of between $235,622.52 and $285,622.52. Southern Pan seeks relief for Liberty Mutual's failure to pay the undisputed portion of the debt. (See Doc. # 54, at 25.) S.B. Ballard challenges this claim, mistakenly assuming the claim is directed at it. In its response to the motion to dismiss, though, Southern Pan clarifies that the claim is directed solely at Liberty Mutual. (See Doc. # 54, at 25 ("Florida common law provides a . . . cause of action for Bad Faith for third parties against sureties.").)

Liberty Mutual also challenges the claim, submitting that Liberty Mutual "was not a party to the Subcontract, and therefore, had no obligation to make payment to Southern Pan."

(Doc. # 46, at 24 n.9.)  The Court is unable to evaluate Southern Pan's claim against Liberty Mutual because the claim is exceedingly vague.  The Court cannot discern whether Southern Pan seeks recovery under Liberty Mutual's bond or on some other theory.[7]  In its response to the motion to dismiss, Southern Pan cites Macola v. GEICO, 953 So. 2d 451 (Fla. 2006), for the proposition that Florida law allows bad faith actions by third parties against sureties.  (Doc. # 54, at 25.)

The Macola court, however, dealt with a vastly different situation than the one disclosed by the record presently before the Court.  In Macola, Quigley negligently injured Macola, and Quigley had a liability insurance policy with GEICO.  Macola, 953 So. 2d at 453.  Macola offered to settle for the policy limits under Quigley's liability insurance policy, but GEICO failed to settle.  Id.  Macola sued Quigley and obtained a judgment significantly above Quigley's policy limits.  Id.  The Florida Supreme Court observed, "When handling claims against its insured, an insurer has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business."  Id. at 454–55.  When an insurer breaches this duty of good faith and exposes the

---

[7]The Court notes that Southern Pan presses a claim for recovery on the bond in count I.  (Doc. # 1, at 4.)

insured to a judgment in excess of policy limits, the insured has a claim against the insurer. <u>Id.</u> at 455.   Additionally, the judgment creditor can proceed directly against the insurer on the insured's bad faith claim.   <u>Id.</u>   Thus, Macola could proceed directly against GEICO for GEICO's breach of its duty to Quigley.

The Court is at a loss to understand how <u>Macola</u> applies to Southern Pan's claim against Liberty Mutual.   Does Southern Pan allege that Liberty Mutual has breached its duty of good faith to S.B. Ballard and therefore exposed S.B. Ballard to a judgment in excess of S.B. Ballard's insurance policy limits?   Does Southern Pan now seek to step into S.B. Ballard's shoes and sue for the breach?   Southern Pan has alleged no facts suggesting it may be entitled to recover on such a theory.   On the present record, the Court can discern no other available theory under which Southern Pan can recover for Liberty Mutual's alleged bad faith refusal to pay undisputed amounts owed by S.B. Ballard.   Accordingly, the claim must be dismissed without prejudice.

## IV.   The Motion for Partial Summary Judgment

The defendants' motion for partial summary judgment relies entirely on the release Southern Pan executed on April 20, 2006, (Doc. # 27-2).   The defendants point to the following language:

> The undersigned [Southern Pan], in consideration of the payments previously made and payment for the period covered by the current invoice/application set forth

20

above, hereby waives and releases all liens and claims
of rights to liens and for the impositions of personal
liability regarding bond rights, all rights to file
and/or claim any such liens in the future, and all
claims, demands and causes of action against S.B.
Ballard Construction {"SBBCC"}, the owner of the real
property {"Owner"}, and the real property on which the
Project is located, in any manner arising out of work,
services, equipment or materials, performed or
furnished by [Southern Pan], its sub-contractors and
suppliers, in connection with the Project and
Subcontract Agreement through the period ending set
forth above [i.e., April 30, 2006].

(Doc. # 27-2.)  This language, the defendants argue, must be

enforced to bar any portions of Southern Pan's claims addressed

to work Southern Pan performed through April 30, 2006.  (Doc. #

27, at 4.)

Southern Pan counters, inter alia, that the release is

unenforceable because it was unsupported by consideration.  (Doc.

# 70-2, at 8.)  Under Florida law,[8] a release must be supported

by consideration.  Bruce Constr. Corp. v. Fed. Realty Corp., 139

So. 209, 211 (Fla. 1932); Ray v. Pollock, 47 So. 940, 941 (Fla.

1908).  Southern Pan explains that the progress payment made in

connection with the release was a preexisting obligation under

---

[8]Though the defendants have argued elsewhere that certain
issues in this case are governed by Virginia law, they do not argue
that the release is governed by Virginia law.  Indeed, they cite
several Florida cases in their motion for summary judgment, but no
case applying Virginia law.  (Doc. # 27.)  The Court observes
without further comment that Virginia law may differ from Florida
law in some important respects.  See Va. Code Ann. § 11-12.

the subcontract. (Doc. # 70-2, at 6.) And, "under Florida law, the payment of a preexisting debt does not constitute consideration."[9] <u>Air Prods. & Chemicals, Inc. v. La. Land & Exploration Co.</u>, 806 F.2d 1524, 1529 (11th Cir. 1986). Southern Pan presents the affidavit of its president that it was paid no additional consideration for the release. (Doc. # 67-2, at 3.)

The Court granted the defendants leave to file a reply to Southern Pan's response. (Doc. # 72.) Despite this, the defendants wholly failed to address Southern Pan's argument that the release was unsupported by consideration. (<u>See</u> Doc. # 74.) Apparently, the defendants rest on the mere suggestion that S.B. Ballard's progress payment to Southern Pan was consideration for the release. (Doc. # 27, at 2 ("On or about April 20, 2006, pursuant to the contract requirements and in order to induce [S.B. Ballard] to pay its Fourteenth Application for Payment submitted on account of labor, services and materials furnished to the Project through April 30, 2006, Southern Pan executed and delivered to [S.B. Ballard] a Subcontractor's Partial Lien Waiver and Release . . . .").) This is insufficient to demonstrate the absence of a genuine question on the matter of consideration.

---

[9]No party argues that the release in this case qualified as a written instrument for the satisfaction of a liquidated debt under section 725.05, Florida Statutes.

22

For that reason, summary judgment must be denied.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

1. Defendants' Motion to Dismiss Counts III–VIII of Plaintiff's Amended Complaint (Doc. # 46) is hereby granted in part and denied in part as follows.

a. Southern Pan's fraud and misrepresentation claims in counts IV and V are hereby dismissed without prejudice.

b. Southern Pan's claims against Liberty Mutual in counts VI and VII are hereby dismissed without prejudice.

c. Southern Pan's claim against Liberty Mutual in count VIII is hereby dismissed without prejudice.

d. In all other respects, Defendants' Motion to Dismiss Counts III–VIII of Plaintiff's Amended Complaint is denied.

2. Should Southern Pan wish to file an amended complaint, it shall do so within TWENTY DAYS of the date of this Order.

3. Defendants' Motion for Partial Summary Judgment (Doc. # 27) is hereby denied.

**DONE** and **ORDERED** in Chambers in Jacksonville, Florida, this 6th day of August 2008.

Virginia M. Hernandez Covington

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record

23